UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| HOPE M. MARKLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18 CV 81 DDN |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Hope M. Markley for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff Hope Markley was born on January 31, 1975, and filed her application for benefits on August 12, 2015.[2] (Tr. 94-95). She alleged a disability onset date of July 9, 2014, for IBS, fibromyalgia, headaches, insomnia, fatigue, depression, memory loss, possible Addison's disease, and double vision. (Tr. 94-95). Her application was denied

---

[1] Andrew M. Saul is now the Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g) (last sentence).

[2] With a date last insured of September 30, 2017, for her DIB claim. (Tr. 94-95).

initially by a disability examiner on November 5, 2015. (Tr. 109.) She appealed that decision and requested a hearing by an Administrative Law Judge ("ALJ").

On June 27, 2017, plaintiff appeared and testified before an ALJ. (Tr. 53-93). A vocational expert also testified at the hearing. (*Id.*). On October 31, 2017, the ALJ denied plaintiff's application, deciding that plaintiff was not disabled. (Tr. 12-31). On July 9, 2018, the Appeals Council considered additional evidence from plaintiff but denied her request for review. (Tr. 1-4.) Thus, the ALJ's decision became the final decision of the Commissioner now before this Court for review. 20 C.F.R. § 404.984(b)(2).

## II.   MEDICAL HISTORY

The Court adopts the parties' statements of uncontroverted material facts (Docs. 18, 23.) These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## III.   DECISION OF THE ALJ

At Step One, the ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity during the period from her alleged disability onset date of July 9, 2014, through the date she was last insured, September 30, 2017. (Tr. 17). At Step Two, the ALJ found that plaintiff had the following severe impairments:

> irritable bowel syndrome ("IBS"), fibromyalgia/cutaneous lupus (also considered as sarcoidosis)/erythema ab igne (all appear to be part of the same condition, but given different diagnoses over the course of treatment), and mental impairments variously diagnosed as panic disorder, generalized anxiety disorder, depressive disorder not otherwise specified ("NOS"), major depressive disorder, and post-traumatic stress disorder ("PTSD").

(Tr. 17-18). At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or were the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 18-20); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ then found that plaintiff has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to unprotected heights and moving mechanical parts. She can occasionally operate a motor vehicle as a job duty. She can never be exposed to humidity and wetness, extreme cold, extreme heat, or vibration. She can have occasional exposure to dust, odors, fumes, and pulmonary irritants. The claimant is limited to performing simple and routine tasks, and making simple work-related decisions. She can have occasional interaction with supervisors and coworkers, but no interaction with the public.

(Tr. 20).

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work as a clerk, bank teller, and office manager. (Tr. 25). However, based on plaintiff's age, education, work experience, and RFC, the ALJ concluded at Step Five that plaintiff was capable of performing other jobs existing in significant numbers in the national economy, such as a laminator, eyewear assembler, and electrical press operator. (Tr. 26).

## IV. <u>GENERAL LEGAL PRINCIPLES</u>

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence also exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental

impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework, described above, is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942 (same).

## DISCUSSION

Plaintiff argues that the ALJ erred in (a) failing to give more weight to the opinions of plaintiff's treating doctor, David J. Knorr, D.O., and (b) assessing plaintiff's RFC. The Court disagrees.

### A. Treating Physician Opinion

Plaintiff argues that under the regulatory framework of 28 C.F.R. § 404.1527 the opinion of her treating doctor, Dr. Knorr, should be accorded controlling weight. This regulatory framework requires that, when a treating source renders a medical opinion well supported by medically acceptable diagnostic techniques and consistent with the other substantial evidence in the plaintiff's record, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in absence of the medical opinion." SSR 96-2p. Plaintiff claims Dr. Knorr's opinion is well-supported by medically acceptable clinical evidence and is not inconsistent with the other substantial evidence in the record.

Dr. Knorr has been treating plaintiff since at least January 2014. (Tr. 330.) On June 8, 2017, he completed a Social Security Administration box-type checklist form captioned "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)." The form contained the following instructions:

> Please assist us in determining this individual's ability to do work-related activities on a sustained basis. "Sustained basis" means the ability to perform work-related activities eight hours a day for five days a week, or an equivalent work schedule. (SSR 96-8p). Please give us your professional opinion of what the individual can still do despite his/her impairments(s). The opinion should be based on your findings with respect to medical

> history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis.
>
> IT IS VERY IMPORTANT TO DESCRIBE THE FACTORS THAT SUPPORT YOUR ASSESSMENT.
> WE ARE REQUIRED TO CONSIDER THE EXTENT TO WHICH YOUR ASSESSMENT IS SUPPORTED.

(Tr. 900.)

On this form, Dr. Knorr opined that plaintiff can lift/carry less than 10 pounds on an occasional basis, stand/walk and sit less than two hours each in an eight-hour workday; occasionally crouch, reach, handle, and push/pull, but never twist, stoop/bend, climb, finger, and feel; avoid all exposure to temperature extremes, high humidity, and the sun; moderate exposure to pulmonary irritants; be off-task 25 percent or more of the workday; miss more than four days of work per month; and take unscheduled breaks during the workday. When asked how often plaintiff must walk around during an 8 hour day, Dr. Knoor wrote "just stand," indicating that she could not walk around at all. (Tr. 900.)

The SSA form provided Dr. Knoor with opportunities to write onto the form the medical findings that support the reported limitations. The first supporting statement he wrote followed question 6. Question 6 asked, "Will your patient sometimes need to lie down at unpredictable intervals during an 8 hour working shift?" Dr. Knoor checked the box for "Yes." He was then asked, "If 'Yes,' how often do you think this will happen?" His answer was, "every hour." He was then asked, "What medical findings support the limitations described above/" In response, he handwrote, "Hope has severe myalgias and chronic fatigue issues." (Doc. 900.)

Question 7 asked, "How often can your patient perform the following *postural activities*?" He checked the boxes indicating plaintiff could never twist, never stoop or bend, occasionally crouch, and never climb stairs or ladders. When asked "What medical findings support the limitations described above?", he handwrote, "Hope has muscle pain and weakness making it difficult to perform above activities." (Tr. 901.)

Question 8 asked Dr. Knoor plaintiff could perform certain "manipulative functions." He checked the boxes indicating that plaintiff could occasionally reach, handle, use her upper extremities, and her lower extremities, but could never finger or feel. When asked what medical findings support these limitations, he handwrote, "See #7 above."

Form question 9 involved factors that required environmental restrictions. He was not asked to provide supporting information regarding the limitations he indicated. Related question 10 asked him to "[s]tate any other work-related activities which are affected by the impairment . . . ." Dr. Knoor answered the question, stating that plaintiff had "vision issues, hearing issues, focus." When asked, "What medical findings support the limitations described above," he handwrote, "Hope has reactions to environmental exposures including pain, erythema, swelling, wheezing and rash." He was not asked to explain any other answer. (Tr. 902.)

The ALJ considered Dr. Knorr's opinions, but concluded that "[w]hile the medical evidence supports a finding that the claimant has work-related limitations, the claimant's condition does not warrant the extreme limitations Dr. Knorr described, particularly with respect to the claimant's ability to sit, stand, and walk, as well as with respect to her postural and manipulative limitations." (Tr. 23). However, the ALJ concluded that the environmental limitations, with respect to temperature extremes and humidity, were supported by the medical evidence. The ALJ accordingly gave Dr. Knoor's opinion "some, but limited, weight." (Tr. 23).

While a treating physician's opinion is normally entitled to controlling weight, it may be discounted if it is inconsistent with other substantial evidence in the record. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016); *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). The treatment records showed only intermittent findings, except for positive fibromyalgia trigger points. The treatment records demonstrated no limitations of the hands or extremities. Despite complaining of constant abdominal pain, particularly when seated, plaintiff's treatment records show only intermittent tenderness in the abdomen. (Tr. 72-74, 276, 280, 286,306, 344, 348, 352, 357, 360, 377, 388, 392, 424,

461, 556, 558, 580, 658, 667, 690, 694, 706, 711, 724, 730, 737, 754, 763, 810, 835, 845, 855, 884, 910). The records repeatedly showed no edema in plaintiff's extremities, and objective tests were negative or showed only mild findings. (Tr. 316-19, 327-28, 366-67, 453-57, 458, 484, 558-59, 583-84, 586, 893-94).

Given the inconsistencies between the treatment notes and his reported opinions, the ALJ's decision to give Dr. Knoor's opinion limited weight is supported by substantial evidence.

### B. RFC Determination

Plaintiff also argues that the ALJ erred in assessing her RFC. Specifically, plaintiff claims that the ALJ did not adequately address her subjective complaints, nor base the RFC on any medical evidence in the record. Plaintiff claims that the ALJ should be directed to obtain clarifying information from a medical source with relevant expertise.

With regard to plaintiff's subjective complaints, the ALJ should consider all evidence in the record and incorporate the factors to be considered under regulations 20 C.F.R. § 404.1529(c)(3). These factors include a plaintiff's daily activities; the location, duration, frequency, and intensity of the pain; the medication used to alleviate the pain; any other treatment for the pain; any other measures taken by the plaintiff to relieve the pain; and failure to comply with treatment. *Id.* An ALJ may only discount a claimant's subjective complaints for "good reasons." 20 C.F.R. § 404.1529; SSR 16-3p.

The ALJ gave good reasons for discounting plaintiff's subjective complaints. First, and as discussed above, plaintiff's medical records are inconsistent with plaintiff's complaints. Although plaintiff reported constant abdominal pain, especially when seated, her treatment records showed multiple physical examinations with soft and non-tender abdomen and normal bowel sounds. (Tr. 72-74, 276, 280, 286, 306, 344, 348, 352, 357, 360, 377, 388, 392, 424, 461, 556, 558, 580, 658, 667, 690, 694, 698-99, 706, 711, 724, 730, 737, 754, 763, 810, 835, 845, 855, 884, 910). Although plaintiff reported jaw pain, the objective findings showed only minimal findings of mild swelling in the right jaw and mild tenderness in the right sinus. (Tr. 65-66, 369-70, 461). Objective tests were

negative or showed only mild findings. (Tr. 316-19, 327-28, 366-67, 453-57, 458, 484, 558-59, 583-84, 893-94). There were constant findings of no edema in plaintiff's extremities, and only intermittent positive neuromuscular or musculoskeletal findings. The ALJ noted that physical examinations showed normal sensation, coordination, strength, range of motion, and gait and stance. (Tr. 72-74, 276, 280, 286, 306, 344, 348, 352, 357, 360, 377, 388, 392, 424, 461, 556, 558, 580, 658, 667, 690, 694, 698-99, 706, 711, 724, 730, 737, 754, 763, 810, 835, 845, 855, 884, 910). The ALJ also noted that plaintiff failed to cooperate in her treatment. She refused to drink the full amount of barium material needed for an abdominal diagnostic test. (Tr. 321, 359-60). She failed to keep appointments or maintain follow up. (Tr. 507, 580, 710.) Her physical therapist thought plaintiff's prognosis to achieve greater functionality was good if she continued treatment. (Tr. 519-47). Finally, the ALJ noted that plaintiff attended church regularly, was involved with her children's activities, and got her children to school. (Tr. 396, 409, 770).

While plaintiff consistently demonstrated positive fibromyalgia trigger points, the ALJ adequately accounted for plaintiff's fibromyalgia impairment. SSR regulations do not create a per se rule that an ALJ must credit the subjective allegations of individuals with fibromyalgia. SSR 12-2p. It states instead that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record [.]" SSR 12-2p. The ALJ found that plaintiff's fibromyalgia was a severe medically determinable impairment and considered all of the related evidence in determining plaintiff's RFC. He considered the severity of her subjective complaints as they were supported by the treatment notes and limited her to less than the full range of sedentary unskilled work, a severely limited RFC.

Although there might be substantial evidence to support a contrary finding, as long as substantial evidence supports the ALJ's decision, the Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome

or because the Court might have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

## **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                                                        **/s/ David D. Noce**
                                          **UNITED STATES MAGISTRATE JUDGE**

Signed on September 16, 2019.